## MAY, 1906.

TEXAS & PACIFIC RAILWAY COMPANY V. M. E. HUBER ET AL.

No. 1527. Decided May 2, 1906.

**1.—Removal of Causes—Separable Controversy.**

An action against a master and his servant for negligence, causing injury to plaintiff, also a servant, presents no separable controversy such as will permit one of the defendants to remove the case against him to the Federal Court. (P. 5.)

**2.—Removal of Causes—Joinder of Defendants.**

Where there are two or more defendants, all must join in an application to remove the cause to the Federal Court, whether the ground be that of diverse citizenship or that the case arises under the Constitution or laws of the United States. (Pp. 5, 6.)

**3.—Same.**

Where the case against joint defendants is not separable, it can not be removed by one defendant against whom the action arises under the Constitution or laws of the United States, though joined by his codefendants, who have themselves no right of removal. Chicago R. I., etc., Ry. Co. v. Martin, 178 U. S., 245, distinguished. (Pp. 6, 7.)

**4.—Federal Court—Jurisdiction—Removal.**

The right to remove causes to the United States Court, under section 2 of the Act of 1888, whether because arising under the Constitution or laws of the United States, or because of citizenship of the parties, extends only to causes "of which the Circuit Courts of the United States are given original jurisdiction;" and such court had not jurisdiction over one not otherwise suable therein by reason of the fact that he was joined as defendant with another, against whom the action arose under the Constitution or laws of the United States. (Pp. 7, 8.)

**5.—Removal of Causes—Dismissal in Federal Court—State Court Retaining Jurisdiction.**

The State Court having properly refused defendant's application to remove a cause to the United States Court, and defendants having filed the transcript in the latter court, which overruled a motion to remand, plaintiff thereupon dismissed his cause in that court. Held, that such dismissal, no jurisdiction having been there acquired, did not prevent plaintiff from proceeding to judgment in the original action against defendants in the state court, nor entitle defendants to have same dismissed and compel the institution of a new action upon showing the proceedings had in the Federal Court. (Pp. 4-9.)

**6.—Action Arising Under Laws of United States.**

The fact that the master is a corporation chartered by the laws of the United States does not make an action against him for his negligence one arising under such laws. (Pp. 8, 9.)

Question certified from the Court of Civil Appeals for the Fourth District, in an appeal from Dallas County.

Huber and others sued and recovered judgment against the railway company and the defendant appealed. Judgment was reversed and remanded in an opinion by Chief Justice James, who concurred in such disposition of the case, but dissented from the conclusion of the majority of the court on the question whether the trial court erred in refusing to dismiss the case upon showing of the proceeding of dismissal had in the United States Court. Thereupon that question is certified to the Supreme Court.

*T. J. Freeman* and *Hall, Flippen & McCormick,* for appellant.— Where ground for removal is based on a federal question and the amount in dispute exceeds $2,000 exclusive of interest and costs, the cause can be removed to the Federal Court, even though a party be joined in the suit as defendant not affected by the federal question, if all defendants join in petition to remove. A party having a defense arising under the Constitution and laws of the United States can not be deprived of his right to maintain his defense in the Federal Court by joining other defendants not affected by the federal question. Where petition shows ground for removal and the bond presented is in all things sufficient, it is the duty of the State Court to make an order removing same, and upon the refusal of the State Court to make such order, the record may be filed within the Federal Court and the State Court no longer has jurisdiction. Act of Congress, March 3, 1887, pertaining to removal of cases; Texas & P. Ry. Co. v. Young, 27 S. W. Rep., 145; Bloom v. Texas & P. Ry. Co., 85 Texas, 285; Dillon on Removal of Causes (5th ed.), sec. 80, p. 95; Mayor v. Independent Steamboat Company, 21 Fed. Rep., 593; Miller v. Le Mars Nat. Bank, 116 Fed. Rep., 551; Martin v. Chicago R. & P. Ry. Co., 178 U. S., 245.

When a cause is removed to the Circuit Court of the United States for the proper district from a State Court, notwithstanding the State Court refused the application to remove and retains jurisdiction, and after removal the party resisting the removal appears in the Circuit Court and submits himself to the jurisdiction, asking that the cause be remanded, and failing in which, he appears in said Circuit Court and takes a nonsuit and consents that a judgment be entered against him, he can not thereafter prosecute the same suit in the State Court, but must commence a new proceeding in the State Court, or abandon his cause of action.

Where a cause has been removed to the Circuit Court of the United States for the proper district, and the State Court refuses to relinquish its jurisdiction, and after the cause has been removed and docketed in the said United States Circuit Court the counsel for party resisting the removal appears in said United States Circuit Court and consents to a continuance of the cause and subsequently takes a nonsuit, he has recognized the jurisdiction thereof and submitted himself thereto, and the taking of a nonsuit in said cause debars him of the right to prosecute the same suit in the State Court, and a motion filed in the State Court

reciting said proceeding and asking that the cause be dismissed in said State Court should have been sutained.

*Marcus M. Parks, W. T. Strange* and *Cockrell & Gray,* for appellees.— Where one of the defendants is a federal corporation and one of the defendants is a resident citizen of this state, and the controversy raised by the plaintiffs' pleading is not a separable controversy, the cause can not be removed by the federal corporation into the Federal Court, and the court did not err in refusing to remove this cause and in assuming jurisdiction to try and determine the controversy. Texas & P. Ry. Co. v. Huber, 8 Texas, Ct. Rep., 82; Southern Ry. Co. v. Carson, 194 U. S., 136; Chesapeake & O. Ry. Co. v. Dixon, 179 U. S., 131.

The State Court having refused appellant's application to remove this cause into the Federal Court, and appellant having carried a transcript of the record of the case in the State Court into the Federal Court and had the case placed upon the docket in the latter court, appellees had either of two remedies that they might pursue without prejudice to them in the State Court, viz: (1) Ignore the docketing of the cause in the Federal Court, (2) appear in the Federal Court and there make a motion to remand, and appellees having appeared there and presented a motion to remand on January 14, 1904, and the motion having been overruled on that date and the cause then called for trial in that court, the appellees believing that the State Court had properly retained jurisdiction and that the State Court had exclusive jurisdiction, had the right to take a nonsuit so far as the Federal Court was concerned, and thereby avoid the prosecution of the same case in two jurisdictions at one and the same time.

The plaintiffs being residents of this state, and the cause of action against the defendants being joint and the defendant, Oliphant, being a resident citizen of this state, the Federal Court could not, by the mere filing of an application and bond for removal by the defendants acquire jursidiction for any purpose, other than to remand the cause to the State Court.

After the State Court refused to remove the cause into the Federal Court on the ground that Oliphant was a resident citizen of the State of Texas, and that the cause of action, as alleged in the plaintiffs' pleading was joint and not separable, the proper course for appellant would have been to submit to the ruling of the State Court reserving an exception, and if the case be affirmed on appeal, then carry the case from the highest state court to the Supreme Court of the United States and there have the point reviewed.

GAINES, Chief Justice.—This case comes to us upon a question certified by the chief justice of the Fourth Supreme Judicial District. The statement and question as certified are as follows:

"The cause was filed originally on April 12, 1902, against the Texas & Pacific Railway Company and R. J. Oliphant, its engineer, for damages against both for alleged personal injuries to Lawrence Huber through the negligence of the engineer.

"In due time the defendants joined in a petition and bond in due form for removal of the cause to the Federal Court, the ground for re-

moval being the fact that the Texas & Pacific Railway Company, defendant, was a corporation organized and existing under Acts of Congress. The District Court held the application regular, but denied it upon the ground that the cause was not removable. The ruling was excepted to. Thereupon the defendant filed a transcript of the proceedings in the proper Circuit Court of the United States, where plaintiffs filed their motion to remand in due time, but which appears not to have been acted upon until January 14, 1904, when it was overruled, whereupon plaintiffs took a nonsuit, and a judgment entry was made accordingly in the minutes of that court.

"The motion to remand asserted four grounds. 1. That it appeared from plaintiffs' petition that R. J. Oliphant is a codefendant of the Texas & Pacific Railway Company in the cause, that said Oliphant is a resident of the State of Texas and was at the time of the institution of the suit, that the cause of action against said defendants is a joint cause of action and there is no diverse citizenship between plaintiffs and the said Oliphant. 2. That there is no order of the State Court removing this cause to the Circuit Court and the same should be stricken from the docket. 3. That there is no federal question involved between the plaintiffs and defendants, and 4th, that the application does not show any diverse citizenship as to the defendant Oliphant and the plaintiffs.

"When the application for removal was denied by the State Court, and such ruling duly excepted to, the State Court proceeded to a trial and judgment was rendered for plaintiffs which judgment on appeal was reversed by the Court of Civil Appeals at Dallas and the cause remanded. This cause was thus remanded and on the docket of the State Court when the nonsuit was taken in the Federal Court.

"On January 26, 1904, after the nonsuit, plaintiffs filed in the District Court of the State a second amended original petition in the original cause asking judgment against both the original defendants on the same cause of action.

"On February 4, 1904, defendants in limine filed a motion in the cause in the said State Court, to dismiss the cause because of the proceedings and judgments in the said Federal Court which was exhibited. This motion was overruled and exception taken to the ruling and the court proceeded with the case. Defendants then filed amended pleadings, without waiving the point that the court was without jurisdiction because of the nonsuit to proceed with the cause, and a trial resulted in a judgment against the appellant, the Texas & Pacific Railway Company, which is here on appeal and now pending on motion for rehearing. There being a difference of opinion between the members of the court on the question certified, the respective opinions filed will accompany this certificate.

QUESTION.

"Did the District Court rule correctly in refusing to sustain the motion to dismiss the cause?"

We are of opinion, that the question should be answered in the affirmative.

The decision of the question calls for a construction of the Act of Congress, approved August 13, 1888, which was amendatory of the judiciary act of the previous year. We quote so much of the latter act as bears upon the question: "That any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, of which the Circuit Courts of the United States are given original jurisdiction by the preceding section, which may now be pending, or which may hereafter be brought, in any state court, may be removed by the defendant or defendants therein to the Circuit Court of the United States for the proper district. Any other suit of a civil nature, at law or in equity, of which the Circuit Courts of the United States are given jurisdiction by the preceding section, and which are now pending or which may hereafter be brought, in any state court, may be removed into the Circuit Court of the United States for the proper district by the defendant or defendants therein, being nonresidents of that state. And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the Circuit Court of the United States for the proper district," etc. (25 U. S. Stat., 434.) Since it appears from these provisions, that in cases falling under them, only those are removable "of which the Circuit Courts of the United States are given original jurisdiction by the preceding section," it is appropriate to quote so much of that section as defines the original jurisdiction of the Circuit Courts, insofar as they are applicable to or throw light upon the question under consideration. The first section of the amendatory Act of 1888 reads as follows: "That the Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000, and arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, . . . or in which there shall be a controversy between citizens of different states, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid," etc. (25 U. S. Stat., 434.)

In determining the question certified we must be guided and controlled by the decisions of the Supreme Court of the United States. That there was no separable controversy in this case is settled by the decision of that court in the case of the Chesapeake & Ohio R. R. Co. v. Dixon. (179 U. S., 131.) Even had such controversy existed, it would have made no difference since the ground of removal was, that it involved a question arising under the Constitution and laws of the United States. (Chicago & Rock Island, etc., Ry. Co. v. Martin, 178 U. S., 245.)

It is now definitely settled that in a case against two defendants, in which the plaintiff and one of them are citizens of the same state and the other defendant is a citizen of another state, the case is not removable upon the sole application of the latter defendant. (Cochran v. Mont-

gomery County, 199 U. S., 260.) In that case the ruling was very pronounced, for the reason, that the party who invoked the jurisdiction of the Circuit Court of the United States by the application to remove the cause to that court, succeeded by certiorari in setting aside the judgment there rendered against him, upon the ground that the cause was illegally removed.

In the case of the Chicago, Rock Island, etc., Ry. Co. v. Martin, supra, it was held, that as to the right to remove, where there was more than one defendant, the same rule applied as to a removal under the first clause of section 1 of the Act, in cases arising under the Constitution and laws of the United States, as to a removal on the ground of diverse citizenship, as provided for in the second clause. In his opinion in that case, Chief Justice Fuller says: "And in view of the language of the statute we think the proper conclusion is that all the defendants must join in the application under either clause." For the reason that a party to a suit which involves a federal question has, in case the question is decided against him, recourse to the Supreme Court of the United States, it would seem that there is less ground for giving him the right to remove his case to the United States Court, than there is for one who has no such recourse.

The decisions referred to seem to settle the question that the railway company could not properly have removed this case by its separate application; but the question remains, does the joinder of its codefendant in the petition for removal make a different case. The language of Chief Justice Fuller just quoted, "that all the defendants must join in the application under either clause," seems to imply, that if the two, or more as the case may be, join in the petition to remove the case, it will be sufficient. The word "join," does not appear in the statute, but as applied to this matter is of frequent use in the decisions; and it seems to us the term, without some qualification, is misleading. We can understand what is meant by a joinder of all the defendants when each of them has a right to remove. It was upon this theory that Railway Company against Martin was decided. That was a case of a joint tort, and was brought by the plaintiff, as administratrix of a decedent's estate, against the Chicago, Rock Island & Pacific Railway Company, and against the receivers of the Union Pacific Railway Company, to recover damages for the death of the intestate. The receivers, who had been appointed by a Federal Court, sought to remove the case on the ground that it was a case arising under the laws of the United States. The Chicago, Rock Island & Pacific Railway Company was not a corporation of Kansas; so that as between it and the plaintiff, there was a diversity of citizenship. The report of the case does not show the citizenship of the plaintiff, but from the fact, that the opinion states that the Chicago, Rock Island & Pacific Railway Company was not a corporation of Kansas, we think it is to be inferred that the plaintiff was a citizen of that state. It had not at that time been decided that the mere fact that the defendant in a case is a receiver appointed by a United States Court does not make a case arising under the laws of the United States as used in the United States Statutes previously quoted; but the opinion proceeds expressly upon the assumption, that, as to the

defendant receivers, if sued alone they would have had a right to re-
move. It seems, therefore, as discussed in the opinion, to be a case in
which all the defendants had a right to remove—the railway company
on the ground of diverse citizenship and the receivers on the ground
that, as to them, it was a case arising under the laws of the United
States. Therefore the language previously quoted from the opinion,
insofar as it implies that the case would have been removable had all
the defendants joined in the application, is to be construed in the light
of the fact that the case was treated as one in which all the defendants
were entitled to remove, the court having reached the conclusion that
all defendants in such a case must join in order to remove it in any
event. We are of the opinion, therefore, that in the remark quoted, it
was not intended to imply that where only one of two or more de-
fendants could have removed a case, if sued alone, there being another
or other defendants who had no right of removal, such right would
exist provided all should join in the application.

But there is another standpoint from which as we think this question
should be viewed. Both the first and second clauses of section 2 of the
Act of 1888, as they are commonly designated, that is to say, the one
applicable to cases arising under the Constitution and laws of the United
States, and the other to cases of diverse citizenship, provide in effect, as
a condition precedent to removal, that the case should be one "of which
the Circuit Courts of the United States are given original jurisdiction."
The codefendant of the railway company was a citizen of the same state
as the plaintiff in this suit, and it is clear that he could not have been
sued alone in the United States Court for damages resulting from his
negligence, without allegations by the plaintiff in his declaration, show-
ing that it was a case arising under the Constitution or laws of the
United States. Could he have been so sued by joining with him a de-
fendant as to whom such allegations were made? We think not. The
case of Independent School District v. Rew (111 Fed. Rep., 1), in our
opinion, throws light upon this question. In that case Rew brought suit
against the School District in the Circuit Court of the United States
upon certain of its bonds and upon the coupons originally attached to
such bonds. The bonds were payable to the order of one Treadway, but
the coupons calling for more than $2,000 in amount were payable to
bearer. Under the statute of August 13, 1888, the United States Circuit
Courts were deprived of jurisdiction of a suit to recover any chose in
action except a foreign bill of exchange by any assignee, unless the suit
could have been maintained against the payee; but the court was per-
mitted to entertain jurisdiction of a subsequent holder of such chose in
action, if made by a corporation, and if payable to bearer, and if the
holder and the defendant were citizens of different states. The question
of jurisdiction having been raised, the trial court held, that, for the
reason that Rew, the original payee, could not have sued in the United
States Court upon the bonds, it was without jurisdiction of that part
of the cause of action; but that it had jurisdiction of the coupons, and
gave judgment upon them for the plaintiff. The defendant carried the
case to the Circuit Court of Appeals of the United States, where the
judgment was affirmed. The question as to the correctness of the ruling

of the trial judge upon the question of jurisdiction was not before the Court of Appeals and was not commented upon nor decided. But it seems to us that the decision of the trial court was correct upon both points. We fail to see how a plaintiff can give jurisdiction over a cause of action over which of itself the United States Court has no jurisdiction by injecting into it another cause of action which that court has power to hear and determine, and we also fail to see how a Federal Court can acquire jurisdiction over a defendant over whom it would have none, by joining him in the suit with one over which the court has jurisdiction.

It seems to have been urged in the Court of Civil Appeals that the bare fact that Oliphant, the codefendant of the Texas & Pacific Railway Company, was its engineer, and that the negligence with which he is charged is alleged to have occurred in the discharge of his duties, makes a case arising under the laws of the United States as to him. We find it difficult to reconcile the rule established in "The Removal Cases" (115 U. S., 1), that the mere allegation that a corporation was created by virtue of an Act of Congress of the United States, makes a case arising under the laws of the United States, with that line of decisions which hold that in order to make such a case it must appear from the allegations of the plaintiff's petition that there is a substantial dispute as to the construction of some law of the United States upon which the decision of the case depends. Whether the removal cases were correctly decided or not, we are bound to take them as established law; but to apply the rule to the servant of a corporation created by the laws of the United States, is to go one step further, and we are of the opinion, that the doctrine should not be extended. The doctrine in the removal cases is rested upon the case of Osborn v. The United States Bank (9 Wheat., 738). The question of jurisdiction there involved was whether the Act of Congress which chartered the bank and attempted to give it power to bring suit in the Circuit Court of the United States was in accordance with the Constitution of the United States. It was held that it was. Since the Constitution declared that "the judicial power shall extend to all cases in law and equity arising under the Constitution and laws of the United States" and some others not necessary to be mentioned, Chief Justice Marshall, who wrote the opinion, in discussing the question whether a suit by the United States Bank which was chartered by Act of Congress was a case arising under the law, says: "The case of the bank is, we think, a very strong case of this description. The charter of incorporation not only creates it, but gives it every faculty which it possesses. The power to acquire rights of any description, to transact business of any description, to make contracts of any description, to sue on those contracts, is given and measured by its charter, and that charter is the law of the United States. This being can acquire no right, make no contract, bring no suit, which is not authorized by a law of the United States. It is not only itself the mere creature of a law, but all its actions and all its rights are dependent on the same law. Can a being, thus constituted, have a case which does not arise literally, as well as substantially, under the law?" It was upon the propositions there laid down that "The Removal Cases" were decided. But do they apply to the servant of a corporation, chartered by Act of Congress,

merely because he is a servant of such a corporation? To ask the question, it seems to us is to answer it in the negative. There might be a case, in which the charter of a corporation of the United States placed some restriction upon the liability of the corporation or of its servants for certain acts, or granted some immunity not allowed by the laws of the State or the general rules of the common law, which would go to the foundation of the action. Such might make a case arising under the laws of the United States. But as we understand the statement upon which the question here presented is based, the original petition of the plaintiff in the State Court made no such question.

Let our answer be certified as indicated in this opinion.